1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7    UNITED STATES OF AMERICA,                     Case No. 2:17-cr-00306-JCM-PAL

8                                    Plaintiff,     **REPORT OF FINDINGS AND**
**RECOMMENDATION**
9         v.

10   FREDERICK THOMAS,                              (Mot Dismiss – ECF No. 467)

                                     Defendant.
11

12         Before the court is defendant Frederick Thomas' ("Thomas") Motion to Dismiss

13   Indictment Under the 5th Amendment Double Jeopardy and Due Process Clause (ECF No. 467),

14   which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the

15   Local Rules of Practice.  The court has considered the motion, the government's Opposition (ECF

16   No. 504), and Thomas' Reply (ECF No. 510).[1]

17                                      **BACKGROUND**

18   **I.    THE INDICTMENTS**

19         **A.  "Infraud" Prosecution**

20         Defendant Frederick Thomas (a.k.a. "Mosto," "1stunna," and "Bestssn") and 34 co-

21   defendants are charged in a Second Superseding Indictment (ECF No. 303) ("Infraud indictment")

22   returned January 30, 2018.[2]  This case arises out of allegations that Thomas and his co-defendants

23   operated a criminal enterprise known as the "Infraud Organization" ("Infraud") in violation of the

24   Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968.

25   Defendants allegedly engaged in identity theft and financial fraud with acts that include, but are

26

27   [1] Defendant Pius Wilson filed an omnibus Motion for Joinder (ECF No. 481) seeking to adopt the motions
of his co-defendants to the extent any motion is applicable to him.  The current motion concerns a co-
defendant's charges in a different case; thus, it is not applicable to Wilson.

28   [2] A total of 36 defendants were named in the Infraud indictment.  One defendant has been dismissed.

not limited to, money laundering, trafficking in stolen means of identification; trafficking in production and use of counterfeit identification; identity theft; trafficking in, production and use of unauthorized and counterfeit access devices; bank fraud; and wire fraud, as well as services in connection with all of those acts. *Id.* at 6, ¶ 1. Although the precise start date is unknown, these crimes allegedly occurred from at least in or about October 2010, up through and including the date of the Second Superseding Indictment. *Id.* at 23, ¶ 12. Infraud purportedly operated in Las Vegas, Nevada, the United States, and throughout the rest of the world. *Id.* at 11, ¶ 4.

Mr. Thomas is accused of advertising within Infraud as a vendor of a "look-up" service for social security numbers and dates of birth.[3] *Id.* at 15, ¶ 8. He is charged in count one with RICO conspiracy in violation of 18 U.S.C. § 1962(d).[4] Count one alleges the defendants were employed by and associated with the Infraud "enterprise" and knowingly conspired to violate § 1962(c) by participating in a pattern of racketeering activity consisting of multiple acts indictable under 18 U.S.C. § 1028 (fraud and related activity in connection with identification documents, authentication features, and information), § 1029 (access device fraud), § 1343 (fraud by wire, radio, or television), § 1344 (bank fraud), and § 1543 (forgery or false use of passport). ECF No. 303 at 24, ¶ 12.

With regard to overt racketeering acts, Thomas is accused as follows:

> From on or about November 13, 2011 to on or about June 13, 2013, **Thomas [7]** ran an AVS ["automated vending site"] that provided a "look-up" service of compromised social security and date of birth personally-identifying information.

> On or about November 18, 2011, **Unindicted Co-conspirator N** used **Thomas' [7]** automated PII search to unlawfully obtain the personally-identifying information of R.Q.N., R.F.K., A.J.S., and other individuals….

> On or about June 27, 2012, **Unindicted Co-conspirator L** used **Thomas' [7]** automated lookup system ·to unlawfully obtain the personally-identifying information of S.C.C., D.J.S., J.H.W., and other individuals.

*Id.* at 29, 31, ¶¶ 14.37–14.38, 14.54.

---

[3] Among other things, vendors allegedly sold "CVV" and "fulls," which refers to stolen credit card account data, including an account holder's name, date of birth, social security number, address, telephone number, and mother's maiden name, as well as the security code on the back of the credit card. *Id.* at 8, ¶ 3.e.

[4] Counts two through nine allege possession of 15 or more counterfeit and unauthorized access devises in violation of 18 U.S.C. § 1029(a)(3) and (c)(1)(A)(I), along with 18 U.S.C. § 2. ECF No. 303 at 39–42.

### B. "carder.su" Prosecution

In January 2012, Thomas was charged in two counts of a 62-count indictment for his membership in the "carder.su" criminal enterprise. *See United States v. Defendant [1]*, Case No. 2:12-cr-0004-APG-GWF (D. Nev.) ("carder.su case"), Indictment (ECF No. 1). A total of 39 defendants were named in the carder.su case. It was alleged that Thomas was a "member" of the carder.su organization who used the online nickname "1Stunna" to participate in criminal activities. *Id.* at 25, ¶ 5.e(vii). In count one (participation in a racketeer influenced corrupt organization in violation of 18 U.S.C. § 1962(c) and § 1963), Thomas was accused of two racketeering acts involving the unlawful transfer, possession, and use of a means of identification. *Id.* at 25, 32–33, ¶ 14. He was charged in connection with account number "X-5580," the name "D. Ewart," and the date March 8, 2009, as well as account number "X-5637," the name "J. Smith," and the date November 12, 2009. *Id.* (racketeering acts 30, 33). In addition, Thomas was accused of one racketeering act involving the possession of 15 or more unauthorized access devices. *Id.* at 35–37, ¶ 16. He was charged with possession of approximately 28 devices on March 5, 2011. *Id.* (racketeering act 66). In count two, Thomas and his co-defendants were charged with RICO conspiracy in violation of 18 U.S.C. § 1962(d). Count two alleges, from on or about November 22, 2005, through June 2011, the defendants knowingly conspired to violate § 1962(c) by participating in a pattern of racketeering activity consisting of multiple acts indictable under 18 U.S.C. § 1028 (identity theft and fraud related to identification documents) and § 1029 (access device fraud). *Id.* at 39–40.

In April 2014, Thomas pleaded guilty to both counts. Mot. Ex. C (ECF No. 467–3).

## II.    THE MOTION TO DISMISS

Mr. Thomas' motion argues that he is being prosecuted twice by the federal government for the same crime: RICO conspiracy in violation of 18 U.S.C. § 1962(d). While serving his sentence on the carder.su case, Thomas was charged in the Infraud indictment. The motion asserts that Infraud is a "direct progeny" of the carder.su case. Both cases have nearly identical facts and allege Thomas bought and sold social security numbers and birth dates. The Infraud case alleges he used the online nicknames "Mosto," "1Stunna," and "Bestssn," and the carder.su case alleged

1    he used "1Stunna" and "Bestssn."  The criminal statutes, elements, facts, and timeframes between

2    both cases overlap.  Mr. Thomas therefore asserts that the two cases should be treated as one and

3    the same under *Blockburger v. United States*, 284 U.S. 299 (1932), and the current indictment

4    should be dismissed under the Double Jeopardy Clause of the Fifth Amendment.

5            If the court concludes that the cases are dissimilar, Mr. Thomas alternatively argues that

6    successive prosecutions for the same criminal conduct that has a direct nexus to the carder.su case

7    is a violation of his right to due process under the Fifth Amendment.  The motion argues that

8    successive prosecutions disadvantage defendants because prosecutors have more information

9    about defendants' preferences and bargaining limits, giving them more leverage in negotiations,

10   and multiple prosecutions can wear down defendants, hindering their approach to plea-bargaining.

11   Mr. Thomas claims the government should have incorporated the alias "Mosto" and the loss

12   attributable to Thomas' Infraud activities into his December 2014 sentencing in the carder.su case.

13   He contends that any additional punishment beyond that imposed in the carder.su case would be

14   cumulative and excessive in violation of the Due Process Clause of the Fifth Amendment.

15           In its response (ECF No. 504), the government acknowledges similarities between Infraud

16   and carder.su, including their hierarchy, structure, similar acts of identity theft and financial fraud,

17   and three common members.[5]  But the government maintains that Infraud and carder.su are not

18   the same.  The government proffers that Svyatoslav Bondarenko founded Infraud in October 2010

19   after he had a falling out with carder.su founder Roman Zolotarev and was banned from the group.

20   *Id.* at 2.

21           The government further argues that the *Blockburger* test does not apply to double jeopardy

22   issues raised by successive RICO prosecutions, which involve multiple violations of the same

23   statute.  *Id.* at 4–5 (citing *United States v. Ruggiero*, 754 F.2d 927 (11th Cir. 1985) (rejecting

24   defendants' double jeopardy argument and finding that two RICO indictments charged two

25   different patterns of racketeering activity)).  The government maintains that for successive RICO

26

27   [5]  Besides Defendant, the government represents that two other individuals are charged in both indictments:
     Liridon Musliu (a.k.a. "Ccstore," "Bowl," and "Hulk") and John Doe #5 (a.k.a. "Deputat" and "Zo0mer").

28   In the carder.su indictment, John Doe 9 is identified by the aliases "Deputat" and "Zo0mer."

1  prosecutions to violate double jeopardy, both the enterprise and the pattern of activity alleged must

2  be the same. *Id.* at 5 (citing *United States v Russotti*, 717 F 2d. 27, 33 (2d Cir. 1993)).

3       Infraud and carder.su used different online forums and had different leadership and

4  membership. Only three individuals were charged as members of both enterprises. Although the

5  Infraud and carder.su conspiracies briefly overlapped from October 2010 until June 2011, Infraud

6  continued for over six years after the Carder.su conspiracy ended. The government also asserts

7  the majority of the Infraud acts forming the pattern of racketeering activity were committed after

8  Carder.su's demise.[6] Thomas engaged in racketeering activity as part of the Infraud Organization

9  after his indictment in Carder.su and even after he pleaded guilty in that case. The fact that both

10 conspiracies involve the same type of underlying racketeering activity (*i.e.*, purchase and sale of

11 personal identifying information), and that Thomas used some of the same aliases does not make

12 them the same offense. Because Infraud and Carder.su allege different enterprises and patterns of

13 activity alleged, the cases are not the same and there is no double jeopardy violation.

14      In his Reply (ECF No. 510), Thomas argues that the evidence received in discovery does

15 not support the government's allegation that he was engaged in criminal conduct under the alias

16 "Mosto." He also asserts that the government waived the due process issue by failing to respond.

17 The reply further claims that *Ruggiero* is distinguishable from the Infraud/carder.su cases and the

18 indictments demonstrate that the two were not different RICO enterprises. The charged activities

19 overlap by nearly eight months. Both Infraud and carder.su involve fraudulent activity occurring

20 "in one place, the world wide web." *Id.* at 5. Because both forums had over 10,000 members, the

21 members' true identities are nearly impossible to determine but they "were the same type of people,

22 members of the dark web intent on committing carding fraud and stealing people's identities." *Id.*

23 Thomas argues that the overall nature and scope of the Infraud/carder.su activities are identical,

24 and he is charged with the "same behavior, being a vendor of social security numbers and birthdate

25 lookups." *Id.* Accordingly, he asks the court to grant his motion.

26

27  [6] The response points out that the Infraud indictment alleges three overt acts committed by the Thomas in
furtherance of the conspiracy between November 2011 and June 2013—after the carder.su racketeering
28  conspiracy ended in June 2011. *Id.* at 3 (citing ECF No. 303 at 29–31).

# DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

Pursuant to Rule 12 Federal Rules of Criminal Procedure,[7] a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).  Rule 12(b)(3) specifies the motions which must be made before trial. Among them is a motion to dismiss for failure to state an offense.  Fed. R. Crim. P. 12(b)(3)(v). "A motion to dismiss is generally capable of determination before trial if it involves questions of law rather than fact."  *United States v. Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017).

In ruling on a pretrial motion to dismiss, "the district court is bound by the four corners of the indictment."  *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).  The court "cannot consider evidence that does not appear on the face of the indictment."  *Kelly*, 874 F.3d at 1046 (citing *Lyle*, 742 F.3d at 436; *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)).  Accordingly, a defendant is not entitled to a pretrial evidentiary hearing to obtain a preview of the government's evidence and an opportunity to cross-examine its witnesses.  *Jensen*, 93 F.3d at 669 ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence.").

## II.   THE INFRAUD INDICTMENT DOES NOT VIOLATE DOUBLE JEOPARDY

The Double Jeopardy Clause of the Fifth Amendment protects a person from being "twice put in jeopardy of life or limb" for the same criminal offense.  U.S. Const. amend. V.  It provides "three separate constitutional protections" against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.  *United States v. Camacho*, 413 F.3d 985, 988 (9th Cir. 2005) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

"The double jeopardy clause precludes the government from dividing a single conspiracy into multiple charges and pursuing successive prosecutions against the defendant."  *United States v. Guzman*, 852 F.2d 1117, 1119–20 (9th Cir. 1988); *see also Braverman v. United States*, 317 U.S. 49, 53 (1942) ("The single agreement is the prohibited conspiracy, and however diverse its

---

[7] All references to a "Rule" or the "Rules" in this order refer to the Federal Rules of Criminal Procedure.

1  objects it violates but a single statute.... For such a violation only the single penalty prescribed by

2  the statute can be imposed."); *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (double

3  jeopardy bar applies only when defendant is punished or tried twice for the same offense).

4  Although *Blockburger* provides the primary test used to determine whether two counts charge the

5  same offense, its test presents a "functional inadequacy" when applied to multiple counts under

6  the same conspiracy statute. *United States v. Bendis*, 681 F.2d 561, 565 (9th Cir. 1981).

7  **A. The *Arnold* Test for Conspiracy Charged Under the Same Statute**

8  When multiple conspiracies are alleged under the same statute, courts evaluate the charges

9  using the five-factor test adopted in *Arnold v. United States*, 336 F.2d 347 (9th Cir. 1964). The

10  *Arnold* test requires a comparison of the alleged: (1) differences in the time periods covered by the

11  conspiracies, (2) places where the conspiracies occurred, (3) persons charged as co-conspirators,

12  (4) overt acts, and (5) charging statutes. *United States v. Ziskin*, 360 F.3d 934, 944 (9th Cir. 2003)

13  (quoting *United States v. Montgomery*, 150 F.3d 983, 990 (9th Cir. 1998)). To prevail on a double

14  jeopardy claim, a defendant must demonstrate "that the two conspiracies are indistinguishable in

15  law and in fact." *Id.* at 943 (quoting *Guzman*, 852 F.2d at 1120). "The defendant bears the burden

16  of showing that the two conspiracies charged actually arise from a single agreement." *Id.* (citing

17  *Montgomery*, 150 F.3d at 990). "Once the defendant makes an initial non-frivolous showing of

18  double jeopardy, 'the government must tender to the court evidence indicating that separate

19  conspiracies are charged'." *Id.* (quoting *Bendis*, 681 F.2d at 564). "Although 'this appears more

20  properly characterized as a burden to go forward with the evidence, it may in practical effect

21  amount to a burden to persuade the court'." *Id.* "The burden of proof, however, does not shift to

22  the government and remains with the defendant." *Id.* (citing *Bendis*, 681 F.2d at 564).

23  In the specific context of successive RICO conspiracy prosecutions, "[e]very circuit to have

24  examined the issue has agreed that double jeopardy only bars successive RICO charges involving

25  both the same enterprise *and* the same pattern of racketeering activity." *United States v.*

26  *DeCologero*, 364 F.3d 12, 18 (1st Cir. 2004) (collecting cases). "In deciding whether two patterns

27  are 'the same' for double jeopardy purposes, other circuits all employ some variation of a 'totality

28  of the circumstances' analysis, using factors akin—although not necessarily identical—to those

used in evaluating the identity of conspiracies." *Id.* (noting that common factors include the time, place, people, and nature and scope of the RICO activities); *see also United States v. Wheeler*, 535 F.3d 446, 449 (6th Cir. 2008); *United States v. Pungitore*, 910 F.2d 1084, 1107–11 (3d Cir. 1990); *United States v. Ruggiero*, 754 F.2d 927 (11th Cir. 1985); *United States v. Russotti*, 717 F.2d 27, 32–33 (2d Cir. 1983); *United States v. Dean*, 647 F.2d 779, 788 (8th Cir. 1981). Additionally, the Ninth Circuit has pointed out, the " 'fact that there is some interrelationship between conspiracies does not necessarily make them the same criminal enterprise,' where one conspiracy involves unlawful transactions 'quite distinct in their means of execution and their objects'." *Ziskin*, 360 F.3d at 944 (quoting *Guzman*, 852 F.2d at 1121).

The parties' briefs specifically discuss the *Ruggiero* test, which instructs courts to compare the alleged: (1) time periods; (2) places; (3) persons; (4) criminal statutes; and (5) "the overall nature and scope" of the RICO activities. 754 F.2d at 932. *Ruggiero* aligns with the five factors established in *Arnold*, which is binding on this court. *See id.* ("These five factors are modified versions of the factors long used to determine whether multiple indictments charge the existence of one or several conspiracies.") (citing *Arnold*, 336 F.2d at 350). For the purposes of determining whether the indictments charge the existence of one "pattern of racketeering activity" or multiple patterns, *Arnold*'s fourth factor—overt acts—is analogous to *Ruggiero*'s last factor—the overall nature and scope of the RICO activities. *Cf. Wheeler*, 535 F.3d at 449–50 (describing this factor as "the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case"). No single factor of the *Arnold* analysis controls; "after consideration of all, the question is whether there was more than one agreement." *Ziskin*, 360 F.3d at 944 (quoting *Guzman*, 852 F.2d at 1121); *but see Wheeler*, 535 F.3d at 450 (noting that the "most significant" factor is the nature and scope of the RICO activities).

**B. Analysis and Decision Pursuant to *Arnold***

Because the conspiracy charge in count one of the Infraud indictment involves the same statute as the carder.su conspiracy charge, 18 U.S.C. § 1962(d), the court applies the Ninth Circuit's *Arnold* test. With respect to *Arnold*'s fourth factor—overt acts—the court examines

1    whether the Infraud and carder.su indictments involve the same enterprise *and* the same pattern of

2    racketeering activity.

3            1.  Time Period

4            The timeframes of the Infraud and carder.su conspiracies are not the same.  The carder.su

5    case charged a RICO conspiracy lasting from November 2005 until June 2011.  The Infraud case

6    charges a RICO conspiracy lasting from October 2010 until January 2018.  Thus, the Infraud

7    allegations may be broadly read as overlapping from October 2010 through June 2011.  The

8    carder.su conspiracy allegedly began almost five years before the Infraud conspiracy, and the

9    Infraud conspiracy continued for nearly six years and eight months after the Carder.su conspiracy

10   ended.  In addition, there is no overlap in the timing of the overt racketeering acts for which

11   Thomas is specifically charged.  Carder.su charged Thomas with racketeering acts occurring

12   between March 2009 and March 2011.  Infraud charges Thomas with racketeering acts occurring

13   between November 2011 and June 2013.  Although both RICO conspiracies overlaps for about

14   eight months, the Infraud conspiracy allegedly continued for another six years after carder,su

15   ended.  Read as a whole, each indictment covers a distinct timeframe and different conspiracies.

16           2.  Locations

17           The Infraud and carder.su conspiracies share certain locations but also have distinct

18   locations.  Infraud purportedly operated in Nevada, the United States, and throughout the rest of

19   the world.  Carder.su allegedly operated in Nevada, California, New York, Missouri, and

20   elsewhere.  Both cases allege extensive conduct on the internet, which renders the geographical

21   location less relevant to the *Arnold* analysis.  This factor is neutral.

22           3.  Co-Conspirators

23           The Infraud conspiracy count names 36 defendants.  The carder.su conspiracy count names

24   39 defendants.  Three defendants were charged in both cases: Thomas, Musliu, and John Doe #5

25   (a.k.a. "Deputat" and "Zo0mer").  Thus, 69 unique defendants are charged in both cases.  The

26   Infraud and carder.su indictments distinguish defendants by their roles and the goals of the

27   conspiracies.  Thomas' argument that both cases involve the same persons because they "were the

28   *same type* of people" is nonsensical.  Reply (ECF No. 510) at 5 (emphasis added).  All conspiracies

involve co-conspirators, either indicted or unindicted.  That all burglaries are committed by burglars does not make them the same for double jeopardy purposes.

Thomas, Musliu, and John Doe #5 are the only three overlapping co-conspirators charged in both cases.  The Ninth Circuit has held that the involvement of identical conspirators in two conspiracies does not compel a finding that a single conspiracy existed.  *Ziskin*, 360 F.3d at 946. Rather, the court "must determine whether the roles performed by the overlapping members were different in each conspiracy."  *Id*.; *see also Montgomery*, 150 F.3d at 991.

In the carder.su case:

- Thomas was charged as a member and specifically accused of three racketeering acts: two involving the unlawful transfer, possession, and use of a means of identification, and one involving the possession of approximately 28 unauthorized access devices on March 5, 2011.  carder.su Indict. at 32–33 (racketeering acts 30, 33), 36 (racketeering act 66).

- Musliu was charged as a vendor of stolen credit card data.  *Id.* at 19.  Musliu was accused in one racketeering act involving the possession of approximately 49 unauthorized access devices on April 12, 2011.  *Id.* at 37, ¶ 16 (racketeering act No. 92), 46 (count fifty-one).

- Deputat/Zo0mer was charged as a vendor of stolen Paypal accounts, proxies, "fullz," credit card checking and information lookups, and "dumps."  *Id.* at 20.  Deputat/Zo0mer was accused in three racketeering acts involving the possession of approximately: 20 unauthorized access devices on March 18, 2011, 23 unauthorized access devices on March 24, 2011, and 19 unauthorized access devices on April 11, 2011.  *Id.* at 36–37, ¶ 16 (racketeering acts 71, 78, 91); 45–46 (counts thirty, thirty-seven, and fifty).

In this Infraud case:

- Thomas is charged as a vendor and accused of three overt racketeering acts of providing "look-up" services for compromised personally-identifying information.  2nd Super. Indict. (ECF No. 303) at 15, ¶ 8; 29–31, ¶¶ 14.37–14.38, 14.54.

- Musliu is charged as a vendor of dumps and an operator of the automated vending sites located at the ccstore.me, ccstore.name, and ccstore.ws domains.  *Id.* at 18, ¶ 8.  Musliu is accused in seven racketeering acts: (1) advertising his online store on the Infraud website

10

in September 2011, (2) offering for sale on his "ccstore" more than 15 compromised credit card numbers belonging to Nevada residents from March to April 2012, (3) selling in excess of 130 compromised credit card dumps to defendant Ali from April to May 2012, (4) selling two compromised credit card numbers to defendant Vargas in August 2012, (5) selling a compromised credit card number to defendant Wilson in January 2013, (6) selling a compromised credit card number to defendant Rojas in October 2013, and (7) selling three compromised credit card numbers to defendant Wilson in November 2013. *Id.* at 28, 30–31, 33, 35, ¶¶ 14.26, 14.48, 14.50, 14.59, 14.68, 14.87, 14.90.  Musliu is also charged in count nine with possession of 15 or more counterfeit and unauthorized access devices in June 2014.  *Id.* at 42.

- John Doe #5 (a.k.a. Deputat/Zo0mer) is charged as an operator of two automated vending sites, swiped.su and approved.su, which he used to sell dumps to other Infraud members and associates.  *Id.* at 18–19, ¶ 8.  He is accused in two racketeering acts: (1)  selling 31 stolen credit card numbers to defendant Vargas from April 2012 to March 2013, and (2) selling in excess of 30 stolen credit card numbers to unindicted co-conspirator Y from April 2012 to March 2013.  *Id.* at 30, ¶¶ 14.47, 14.51.  He is also charged in count eight with possession of 15 or more counterfeit and unauthorized access devices in February 2015.  *Id.* at 41.

Although Thomas, Musliu, and John Doe #5 (a.k.a. Deputat/Zo0mer) were charged in both the Infraud and carder.su conspiracies, the court finds that their roles and functions in each conspiracy differed significantly.  The minimal overlap does not compel a finding of a single conspiracy.  This element of the *Arnold* test tips in favor of multiple conspiracies.

### 4.  Overt Acts (*i.e.*, the enterprise and pattern of racketeering activity)

The overt racketeering acts alleged in the two cases indicate that Infraud and carder.su are separate enterprises with different patterns of racketeering activity.  *See DeCologero*, 364 F.3d at 18.  Mr. Thomas does not dispute the government's proffer that Bondarenko founded Infraud in October 2010 after he had a falling out with carder.su founder Roman Zolotarev and was banned from the group.  Each organization purportedly operated an online forum for its members through

various websites. Thomas does not allege that the websites or online forum were the same for both carder.su and Infraud. The indictments also allege different leadership and a distinct hierarchy. The carder.su indictment alleged that its leaders were Zolotarev, the administrator and head of its governing counsel, and moderators Konstantin Lopatin and John Doe 4 (a.k.a. "Maxxtro"). Carder.su's hierarchy included an administrator, reviewers, vendors, and members. The Infraud indictment alleges that Bonderenko and Medvedev are the organization's leaders as its co-founders and administrators. Infraud's hierarchy includes administrators, super moderators, moderators, vendors, VIP members (a.k.a. "Advanced Members"), and general members. Thomas does not contend that the leadership of Infraud and carder.su are the same. He claims the indictments allege identical member roles. However, the Infraud indictment describes two roles that were not included in the carder.su indictment (super moderators and VIP members) and omits one role (reviewer). The government has alleged two separate enterprises.

The patterns of racketeering activity are also different. Although the Infraud and carder.su organizations conducted a similar type of racketeering activity (*i.e.*, purchase and sale of personal identifying information), none of the specific 109 racketeering acts alleged in the carder.su indictment is repeated in the Infraud indictment, even those alleged for the overlapping co-conspirators Thomas, Musliu, and John Doe #5. Charging the same *type* of racketeering activity does not make all racketeering activity part of one pattern. *See DeCologero*, 364 F.3d at 19 (finding different patterns of racketeering activity where "*all* of the incidents constituting substantive non-RICO crimes and *all* of the RAs in the present indictment" were different from those charged in the prior case). Because Infraud and carder.su allege different enterprises and patterns of activity, the cases are not the same.

### 5. Statutes Violated

Both indictments charge a RICO conspiracy under the same statute, 18 U.S.C. § 1962(d). They both allege a conspiracy to violate 18 U.S.C. § 1962(c), by participating in a pattern of racketeering activity in furtherance of carder.su and Infraud. Based on the analysis finding different enterprises and patterns of activity, this factor is neutral.

Examining the allegations of the Infraud and carder.su conspiracies as a whole, the court

1    finds that the *Arnold* test compels the conclusion both involve separate conspiracies. Thomas has

2    failed to meet his burden of showing that the conspiracies are indistinguishable in law and fact.

3    Accordingly, the court finds no double jeopardy violation.

4    **III.    THE INFRAUD INDICTMENT DOES NOT VIOLATE DUE PROCESS**

5        The Attorney General and the United States Attorney have broad discretion to enforce

6    federal criminal laws. *United States v. Armstrong*, 517 U.S. 456, 463 (1996) (collecting cases). A

7    presumption of regularity supports prosecutorial decisions and, "in the absence of clear evidence

8    to the contrary, courts presume that they have properly discharged their official duties." *Id.* at 464

9    (citing *United States v. Chemical Foundation*, *Inc.*, 272 U.S. 1, 14–15 (1926)). As long as a

10   prosecutor has probable cause to believe the accused has violated the law, the decision whether or

11   not to prosecute and what charge to bring before a grand jury generally rests in the prosecutor's

12   discretion. *Id.* (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Nevertheless, the

13   Supreme Court has acknowledged that successive prosecutions may impose hardship on a

14   defendant. *See, e.g.*, *Abbate v. United States*, 359 U.S. 187, 198–99 (1959) ("The basis of the Fifth

15   Amendment protection against double jeopardy is that a person shall not be harassed by successive

16   trials; that an accused shall not have to marshal the resources and energies necessary for his defense

17   more than once for the same alleged criminal acts.").

18       The broad discretion afforded to prosecutors does not mean that multiple prosecutions will

19   never result in a denial of due process. *United States v. Pungitore*, 910 F.2d 1084, 1112 (3d Cir.

20   1990) (citing *Blackledge v. Perry*, 417 U.S. 21 (1974) (vindictive prosecution brought in retaliation

21   to defendant's invocation of procedural rights violates due process)). However, "the fact of

22   multiple prosecutions, standing alone, does not prove an abuse of prosecutorial discretion." *Id.*

23   To successfully raise a due process claim, "the defendant must affirmatively establish

24   vindictiveness." *Id.* Where a defendant points "to no evidence of prosecutorial abuse but relies

25   solely on the fact of multiple prosecutions," the due process challenge fails. *Id.*; *Sanchez v. United*

26   *States*, 341 F.2d 225, 229 (9th Cir. 1965) (an accused is not denied due process when nothing more

27   appears than two successive prosecutions for separate offenses arising out of factually distinct

28   transactions).

1    Here, Thomas asserts his due process rights have been violated because the conduct alleged

2 in the Infraud indictment has a "direct nexus" to carder.su.  His motion implies this prosecution

3 was vindictively brought because the government was dissatisfied with the sentence he received

4 in the prior case.  He simply claims the government should have incorporated the "Mosto" alias

5 into its sentencing arguments in the carder.su case.  For the reasons explained above this is not the

6 same case, with the same defendants involving the same conspiracy and the same co-conspirators

7 committing the same offenses over the same time period as the carder.su case.  The Infraud

8 indictment does not violate Thomas's due process rights.  *See United States v. Snell*, 592 F.2d

9 1083, 1085 (9th Cir. 1979) (rejecting claim of "repetitive harassment" from successive prosecution

10 where charges did not implicate double jeopardy).

11    For the reasons explained,

12    **IT IS RECOMMENDED** that Thomas' Motion to Dismiss Indictment Under the 5th

13 Amendment Double Jeopardy Due Process Clause (ECF No. 467) be **DENIED**.

14    DATED this 8th day of April 2019.

15

16

17    PEGGY A. LEEN
      UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28